UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON THOMPSON,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | ) Case No.: 1:14-cv-01100- JLT<br>)<br>) ORDER REMANDING THE ACTION PURSUANT<br>) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br>)<br>) ORDER DIRECTING ENTRY OF JUDGMENT IN<br>) FAVOR OF PLAINTIFF SHANNON THOMPSON<br>) AND AGAINST DEFENDANT CAROLYN<br>) COLVIN, ACTING COMMISSIONER OF SOCIAL<br>) SECURITY<br>) |

Plaintiff Shannon Thompson asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record. Because the ALJ failed to set forth legally sufficient reasons for rejecting the social limitations identified by a physician, the administrative decision is **REMANDED** for further proceedings.

## BACKGROUND

On February 28, 2011, Plaintiff filed her applications for benefits, in which she alleged disability beginning October 1, 2010. (Doc. 10-3 at 16) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*Id.*; Doc. 10-5 at 2-10, 18-30) Plaintiff requested a hearing, and testified before an ALJ on October 29, 2012. (*Id.* at 16, 32) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying

benefits on November 30, 2012.  (*Id.* at 16-26)  Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on May 16, 2014.  (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

On July 13, 2014, Plaintiff initiated this action for judicial review of the ALJ's decision by filing a complaint pursuant to 42 U.S.C. § 405(g).  (Doc. 1)  Plaintiff filed his opening brief in the matter on April 20, 2015.  (Doc. 19)  Defendant filed a brief in opposition on July 6, 2015.  (Doc. 20)

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

### A. Relevant Medical Evidence[1]

Dr. Gerardine Gauch conducted a comprehensive psychiatric evaluation of Plaintiff on April 23, 2011. (Doc. 10-8 at 4) Plaintiff reported she suffered physical abuse, beginning when she was an infant when "her father hit her and her sister's heads together," leading to her being in the hospital "for about one month." (*Id.* at 5) Plaintiff also told Dr. Gauch that "[h]er hips have been broken due to physical abuse by her parents." (*Id.*) She stated that "she attempted suicide at age 13 or 14 by alcohol poisoning." (*Id.*) Also, Plaintiff "reported that she was diagnosed with bipolar disorder in 1987 or 1988, during a 30-day hospital stay," where she was treated with lithium. (*Id.* at 4) She told Dr. Gauch:

> She sought alternative treatment to medications for bipolar disorder because the medications did not allow her to think or feel alive. She later returned to taking medications, including lithium and Wellbutrin twice, to help her get past whatever she got stuck in, but she has never intended to stay on medications.

(*Id.* at 5) Plaintiff reported she did "chores around the house, including dishes and raking the yard," and

---

[1] Plaintiff challenges only the ALJ's evaluation of the medical record related to her mental limitations and abilities. Accordingly, only portions of the record related to Plaintiff's mental abilities are summarized herein, although the Court has reviewed all the medical records.

3

that she "cooks sometimes and cleans." (*Id.* at 8)  Dr. Gauch noted that Plaintiff "reported that she was fired three times from mortgage offices because she would not submit loans with fake documents." (*Id.* at 6)  In addition, Plaintiff "described herself as argumentative with labile emotions and problems with authority;" and said, "sometimes she worked well with coworkers and sometimes she felt no need to socialize with them." (*Id.*)  She reported she had friends, and that she lived with one of her friends. (*Id.* at 8)

Dr. Gauch observed that Plaintiff was cooperative, but her "attitude was mildly superior." (Doc. 10-8 at 6)  In addition, Dr. Gauch found Plaintiff's "[s]tream of mental activity was within normal limits" and her "[t]hought content was appropriate." (*Id.*)  Plaintiff "was able to recall 3/3 items immediately and 2/3 items after several minutes." (*Id.* at 7)  Dr. Gauch determined that Plaintiff's "concentration ability was within normal limits" because she "was able to perform a simple three-step command successfully after it was repeated once." (*Id.*)  However, Plaintiff's judgment and insight were limited. (*Id.* at 8)  According to Dr. Gauch, Plaintiff had a "fair" ability to understand and remember both "very short and simple instructions" and "detailed instructions." (*Id.* at 9)  In addition, Dr. Gauch believed Plaintiff's "ability to maintain attention and concentration is fair;" her "ability to sustain an ordinary routine without special supervision is fair;" and her "ability to complete a normal workday and workweek without interruptions at a constant pace is fair, influenced primarily by her mood disorder." (*Id.*)  Further, Dr. Gauch opined that Plaintiff's "ability to interact with coworkers is fair, influenced primarily by her mood disorder." (*Id.*)  Dr. Gauch concluded, "the likelihood of the claimant emotionally deteriorating in the work environment is fair," and that "[t]he likelihood of the claimants mental condition improving in the next 12 months is fair." (*Id.*)

On May 4, 2011, Plaintiff visited the Stanislaus County Health Services Agency to establish care and to have a "form filled out" for the welfare office. (Doc. 10-8 at 12, 81)  Plaintiff reported she previously received disability payments, but they were stopped when she began working. (*Id.*)  Plaintiff said she "now desired to re-instate" her disability because her "Bipolar [disorder] worsened w/ working." (*Id.*)

Plaintiff received a referral to Pete Thompson, a social worker, with whom she met on May 11. (*Id.* at 18, 84)  Mr. Thompson noted that Plaintiff "shared that she was severely depressed and thought

4

about suicide a lot but had no plan to act on it." (*Id.* at 84)  Plaintiff reported her mother was "very cruel," and her father was "alcoholic and bipolar." (*Id.*)  He believed Plaintiff suffered from "Major Depression, Recurrent, Severe, R/O PTSD." (*Id.*)

On May 23, 2011, Plaintiff met with Mr. Thompson for a second session.  (Doc. 10-8 at 83)  Plaintiff said, "everything [was] very difficult and she [was] needing resources," but she was able to stay with a friend.  (*Id.*)  Mr. Thompson told Plaintiff that medication would help, but Plaintiff responded that, "it would not work." (*Id.*)  Though Mr. Thompson scheduled Plaintiff for a session the following week, she did not keep the appointment.  (*See id.* at 82)

Dr. Laura Lochner completed a mental residual functional capacity assessment and psychiatric review technique forms on June 15, 2011.  (Doc. 10-8 at 20-50)  Dr. Lochner believed there was insufficient evidence to evaluate the severity of Plaintiff's mental impairments between January 1, 2005 and June 30, 2009.  (*Id.* at 20)  Accordingly, Dr. Locher evaluated Plaintiff's "current" abilities.  (See *Id.* at 34)  Dr. Lochner found Plaintiff was "not significantly limited" with her ability to understand, remember, and carry out "very short and simple instructions;" "to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances;" "to work in coordination with or proximity to others without being distracted by them;" and "complete a normal workday and workweek." (*Id.* at 34-35)  In addition, Dr. Lochner opined that Plaintiff was "markedly limited" with her "ability to interact appropriately with the general public," but was "not significantly limited" in all other aspects of social interaction, including her "ability to get along with coworkers or peers" and "to maintain socially appropriate behavior." (*Id.*)  According to Dr. Lochner, Plaintiff had a mild restriction of activities of daily living; marked difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  (*Id.* at 48)  Dr. Lochner noted Plaintiff was "not currently on any medications" and "not receiving any mental health treatment," although she would "most likely benefit from treatment." (*Id.* at 50)  Dr. Lochner concluded Plaintiff was "capable of simple work." (*Id.*; *see also* Doc. 10-8 at 36 (finding Plaintiff "can perform simple tasks with routine supervision" but "cannot relate to the general public"))

On January 19, 2012, Dr. Uwe Jacobs affirmed the assessment that Plaintiff was able to perform simple, repetitive tasks with limited public contact.  (Doc. 10-8 at 62-63)

5

On October 30, 2012, Plaintiff's lawyer called Mr. Thompson. (Doc. 10-8 at 82) Lisa Bolivar pulled the records for Mr. Thompson, and noted Plaintiff was "last seen on 5-23-11." (*Id.*) On November 2, 2012 Mr. Thompson noted: "Called lawyer office, [Plaintiff] wants to come in and talk w/ me." (*Id.*)

**B.      Administrative Hearing Testimony**

Plaintiff testified that she completed the 10th grade, after which she passed the California proficiency exam, the equivalent of a high school GED. (Doc. 10-3 at 36) In addition, Plaintiff said she took "a couple courses for mortgage processing" with the American School of Mortgage Banking. (*Id.*) She reported that she worked several positions such as mortgage processing, loan originating, consultations with notaries, computer data entry, and administration. (*Id.* at 36, 38-39, 55, 57) However, she had not worked since returning to California in December 2010. (*Id.* at 40)

She said she suffered from "bone on bone grinding" in her spine. (Doc. 10-3 at 40) She reported that she did not go to the doctor for pain because she did not have insurance and could not afford to see a doctor. (*Id.*) Plaintiff said she did not take prescription pain medication due to "religious reasons" which made her "think that everyday use of medications is appropriate." (*Id.* at 41-42) Plaintiff testified that she would "[v]ery rarely" take over-the-counter medication such as Aleve "[t]o subside the pain." (*Id.* at 42)

In addition, Plaintiff testified that she was "bipolar," which she said caused "[s]evere depression and . . . periodic spikes of just inability to sleep, inability to concentrate." (Doc. 10-3 at 45) She reported that she received mental health treatments in 1996 or 1997, and saw a therapist in 2011, which the "county paid for." (*Id.*) Plaintiff said she "went to [therapy] four times," and "maxed out what [she] was allowed to use." (*Id.*) Plaintiff reported that she was not taking prescription medication to help with her bipolar symptoms. (*Id.*) Instead, Plaintiff said she "took the advice of a couple people" she knew to change her diet, which she believed helped. (*Id.*)

Plaintiff testified that she lived with a friend who worked from home doing "property management." (Doc. 10-3 at 46, 51) She said she did not have a driver's license because she let it expire when she lived in the Virgin Islands. (*Id.* at 47) Plaintiff reported she used a computer to "send emails," check her LinkedIn profile and occasionally watch videos on YouTube. (*Id.* at 49-50) She

said she taught her friend Ann to use Google but "every now and then" she would assist Ann. (*Id.* at 51) Plaintiff reported that she was not involved in any outside activities. (*Id.*)

Vocational expert, Cheryl Candler, testified at the hearing. (Doc. 10-3 at 54) The VE testified that with Plaintiff's work history, she could be expected to have acquired "[w]ritten and oral communications using computers, 10 keys, [and] various office skills." (*Id.* at 59)

The ALJ asked the VE to consider a hypothetical individual "of the same age, education, work history and transferable skills" who "could sit, stand, walk less than even two hours each in a normal workday;" [l]ift and or carry less than 10 pounds even occasionally;" and "[n]ever climb, balance, stoop, kneel, crouch, [and] crawl." (*Id.* at 59-60) Further, the individual did "not have sufficient concentration ability for even simple, routine tasks." (*Id.* at 60) With these parameters, the VE opined there were no full-time jobs the person could perform. (*Id.*)

Next, the ALJ asked the VE to consider a hypothetical person who "could work at jobs involving simple, routine, repetitive tasks." (Doc. 10-3 at 60) The individual had the ability to sit, stand, or walk "six out of eight hours each;" lift and/or carry 50 pounds occasionally and 25 pounds frequently; and occasionally climb ramps or stairs. (*Id.*) Further, the person could "never work around hazards like moving dangerous machinery, unprotected heights;" and "never climb ladders, ropes, or scaffolds." (*Id.*) The VE opined an individual with these limitations would be able to perform "medium, unskilled work" such as a change person, *DOT* 211.467-034, and a hand packager, *DOT* 920-587-018.[2] (*Id.* at 60-61) The VE observed there were 11,000 hand packager jobs in California and "approximately 80,000" nationally, but the number would be reduced by "50 percent for potential hazards in some environments." (*Id.*)

**C.     Third Party Statement**

Plaintiff's friend and roommate, Paul Tipton, completed a "Function Report" on April 5, 2011. (Doc. 10-7 at 19) Mr. Tipton believed Plaintiff was unable to work "due to severe mood swings and depression." (*Id.*) He said Plaintiff "ha[d] been unable to maintain the relationship skills necessary for

---

[2] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

working." (*Id.*)  Mr. Tipton explained she would not be on time, cried at work, and was "terminated from every job." (*Id.*)  Further, Mr. Tipton reported that when Plaintiff was in "a manic state," she got "very little sleep;" and when she was in "a depressive state," she could sleep "16-18 hrs a day for 3-4 months at a time." (*Id.*)

According to Mr. Tipton, Plaintiff did not "maintain proper nutrition" because she would eat some days, and other days she would not.  (Doc. 10-8 at 20-21)  Mr. Tipton noted Plaintiff preferred not to go out alone, but he drove her to the grocery store once a week.  (*Id.* at 22)  He believed Plaintiff had difficulty communicating with and getting along with others.  (*Id.* at 24)  Mr. Tipton reported Plaintiff did not get along with authority figures "at all," and that she told him she had been fired or laid off because of problems getting along with others.  (*Id.* at 25)

**D.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the amended alleged disability date of October 1, 2010.  (Doc. 10-3 at 18)  Second, the ALJ found Plaintiff "has the following severe impairments: spondylosis of the lumbar spine and bipolar disorder." (*Id.*)  These impairments did not meet or medically equal a listed impairment.  (*Id.* at 18-21)  Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is never able to climb ladders, ropes, or scaffolds.  She is occasionally able to climb ramps and stairs.  The claimant is never able to work around hazards such as moving or dangerous machinery and unprotected heights.  She is limited to performing simple, routine, and repetitive tasks.

(*Id.* at 20)  With this residual functional capacity, the ALJ found Plaintiff retained the ability to perform "jobs that exist in significant numbers in the national economy," including work as a change person and hand packager.  (*Id.* at 25)  Accordingly, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.* at 26)

**DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred in rejecting portions of the opinions of Drs. Gerardine Gauch and Laura Lochner related to her mental functioning.  (Doc. 15 at 6-11)  In addition, Plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting the opinions of her roommate, Paul Tipton.  (*Id.* at 11-12)

**A.     Evaluation of the Medical Record**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the courts apply a hierarchy to the opinions offered by physicians.

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff contends the ALJ erred by rejecting portions of the opinions of Dr. Gauch and Dr. Lochner related to her mental functioning. (Doc. 15 at 6-11) According to Plaintiff, "Dr. Gauch opined that the severity of the symptoms was in the moderate range." (*Id.*) On the other hand, Defendant argues that the opinion of Dr. Gauch was incorporated into the RFC assessment because "[a] reading of Dr. Gauch's opinion suggests that Plaintiff—while somewhat limited—was still able to meet the ordinary mental demands of a competitive workplace environment." (Doc. 20 at 6)

1.     Opinion of Dr. Gauch

Notably, though Plaintiff asserts Dr. Gauch opined Plaintiff's impairments were "moderate," Dr. Gauch determined Plaintiff had a "fair" ability to understand and remember both "very short and simple instructions" and "detailed instructions." (Doc. 10-8 at 9) Courts have examined the definition of the word "fair," and found that it does not indicate an activity or ability is precluded. The Eighth Circuit explained:

> The word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant cannot return to past work. Rather, the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

*Cantrell v. Apfel*, 231 F.3d 1104, 1107-08 (8th Cir. 2000). The definition set forth in *Cantrell* was adopted by the Sixth Circuit in *Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) and has been cited with favor by the Ninth Circuit. *See Chang v. Comm'r of Soc. Sec. Admin.*, 507 Fed. App'x. 698, 699 (2013). In *Chang*, the Ninth Circuit determined "the ALJ did not err in concluding that when [the physician] used the word 'fair' to describe the [claimant's] abilities in a particular area, he implied <u>no disabling impairment</u> in that area." *Id.* (citing *Cantrell*, 231 F.3d at 1107-08, emphasis added).

Moreover, this Court has determined an ALJ does not err in finding a claimant was not disabled where a physician concluded the claimant had "fair" to "good" work-related abilities— even where the physician also believed there is "a 'fair' likelihood of plaintiff 'emotionally deteriorating in a work environment.'" *Wade v. Astrue*, 2011 WL 4500863 at *4-5 (E.D. Cal. Sept. 27, 2011). Similarly, the courts have determined a limitation to "simple, repetitive tasks" incorporates a physician's opinions that a claimant had "both a fair ability to deal with changes in the work setting and complete a normal workday/workweek without interruptions on a consistent basis," despite the fact that a physician also believed there was "a *moderate* likelihood of emotional deterioration." *Podborny v. Astrue*, 2011 WL 1456187 at *2 (C.D. Apr. 14, 2011) (emphasis added).

Here, as the ALJ noted, despite the fact Dr. Gauch concluded "the likelihood of the claimant emotionally deteriorating in the work environment is fair," she also believed Plaintiff had a "fair" ability "to sustain an ordinary routines," "to complete a normal workday and workweek without interruptions at a constant pace." (Doc. 10-3 at 24; *see also* Doc. 10-8 at 9) Because Dr. Gauch opined

Plaintiff had, at least, a "fair" ability to perform all work-related activities, the limitation to "simple, routine, and repetitive tasks" incorporates the limitations assessed by Dr. Gauch. *See Chang,* 507 Fed. App'x. at 699; *Wade,* 2011 WL 4500863 at *4-5; *Podborny v. Astrue,* 2011 WL 1456187 at *2.

2. Opinion of Dr. Lochner

Plaintiff also argues the ALJ erred in rejecting portions of the opinion of Dr. Lochner. (Doc. 15 at 7) She asserts, "Dr. Lochner found that Plaintiff's limitation in social functioning was marked and difficulties in concentration, persistence and pace were moderate," and she "was markedly limited in the ability to understand, remember, and carry out detailed instructions and ability to interact with the general public." (*Id.*) Specifically, Dr. Lochner determined Plaintiff was "markedly limited" with her "ability to interact appropriately with the general public," but was "not significantly limited" in all other aspects of social interaction, including her "ability to get along with coworkers or peers" and "to maintain socially appropriate behavior." (Doc. 10-8 at 34-35) In addition, Dr. Locher opined that Plaintiff was "not significantly limited" with her ability "to work in coordination with or proximity to others without being distracted by them." (*Id.* at 34) Dr. Lochner concluded that Plaintiff "cannot relate to the general public." (*Id.* at 36)

Significantly, Dr. Lochner's opinion, that Plaintiff had "marked" limitations in interacting with the public, was not contradicted by another physician. Dr. Gauch did not offer any findings related to Plaintiff's ability to interact with the public. As a result, the ALJ was required to identify "clear and convincing" reasons to reject Dr. Lochner's opinion in this regard. *See Lester*, 81 F.3d at 831. The ALJ gave only "some weight" to the assessment of Dr. Lochner because:

> [T]he medical evidence of record shows that the claimant received no treatment for her mental condition after the amended alleged onset date except for two therapy sessions that she did not continue. In addition, the claimant's activities of daily living and level of communication and intelligence showed during Dr. Gauch's evaluation do not support the claimant's alleged inability to perform work.

(*Id.* at 24)

The Ninth Circuit has determined that the opinion of a physician may be given less weight when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ found that Plaintiff's activities of daily living included "household chores such as washing the dishes and

11

raking the leaves," "shopping with a friend," reading, taking short walks, and going to appointments. (Doc. 10-3 at 23)  In addition, the ALJ noted Plaintiff "testified that she used her laptop to send emails, check her Linkedin profile online, [G]oogle information for her roommate, and watch clips on YouTube." (*Id.*)  However, the ALJ fails to explain how these activities—most of which were performed by Plaintiff at home— contradict Dr. Lochner's opinion that Plaintiff is unable to interact with the public.  Although Plaintiff testified that "she enjoyed museums" and said she went grocery shopping, these activities did not occur on a *daily* or sustained basis.  Rather, Mr. Tipton, reported that Plaintiff preferred not to go out alone, and he drove Plaintiff to the grocery store once a week.  (Doc. 10-8 at 22)  Moreover, the ALJ fails to explain how Plaintiff's failure to seek treatment for her mental limitations undermines Dr. Lochner's opinion that Plaintiff has "marked" limitations with interacting with the public.  Accordingly, the ALJ failed to identify clear and convincing reasons for rejecting these findings from Dr. Lochner.

**B.     Remand is Appropriate in this Matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the limitations assessed by Dr. Lochner.  This error was not harmless, because the jobs identified by the vocational expert may require interaction with the public, and there is no information in the

record regarding the number of jobs available to a worker who cannot interact with the public. *See DOT* 211.467-034, 1991 WL 671854 (explaining the job requirements for change person require "significant" interaction with people). Thus, the ALJ must determine to extent to which Plaintiff is able to interact with the public, and should obtain testimony from a vocational expert to determine whether Plaintiff is able to perform work existing in significant numbers with the social limitations. Given these outstanding issues, the matter should be remanded for further consideration.

## CONCLUSION AND ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Shannon Thompson and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **October 29, 2015**          **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE